## Montgomery, Appellant, v. Southern Mutual Insurance Company.

*Insurance—Fire insurance—Policy—Construction — Exemption —Fires from locomotive engines—Proximate cause.*

1. Words of exemption contained in a policy of fire insurance are to be most strongly construed against the insurer and in favor of the insured, and in so construing them, reasonable effect is to be given to them so as not to defeat—unless there be an imperative necessity to do so—the indemnity which the insured sought and thought he had secured through the policy of insurance.

2. In an action of assumpsit upon a policy of fire insurance, it appeared that the policy contained a clause providing, "this policy ......will not cover loss or damage by fire happening by means of......fire from, or occasioned by locomotive engine or engines." A portion of plaintiff's farm had been condemned for the purpose of the construction of a railroad, and a construction company was engaged in work thereon. A tobacco shed which had been left standing, partly on the company's right of way and partly on the plaintiff's land, took fire from a spark which was thrown from an engine operated on the work, and this fire in turn was communicated to plaintiff's buildings covered by the policy of insurance. *Held,* plaintiff was entitled to recover.

3. In such a case, the words of the exempting clause of the policy will be construed to contemplate a fire directly from or directly

occasioned or caused by a locomotive engine or engines, and not a fire caused by sparks from another building which had first been set on fire by a spark from an engine.

Argued April 19, 1913. Appeal, No. 22, Jan. T., 1913, by plaintiffs, from judgment of C. P. Lancaster Co., Jan. T., 1906, No. 28, in favor of defendant n. o. v. in case of Isaac Montgomery and S. Emma Williams, Administrators of Isaac Montgomery, deceased; Sarah Montgomery, widow, and S. Emma Williams, Isaac Montgomery, Jr., James Montgomery, Jr., Mary Elizabeth Chamberlain, Ruth A. Conner, and F. Marian Fritz, Heirs of Isaac Montgomery, deceased, v. The Southern Mutual Insurance Company, of Lancaster County. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Assumpsit to recover upon a policy of fire insurance. Before LANDIS, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiffs for $4,533.35. Subsequently the court on motion entered judgment for defendant n. o. v. Plaintiffs appealed.

_Error assigned_ was the entry of judgment n. o. v.

_William H. Keller,_ with him _John A. Coyle,_ for appellant.—The policy of insurance should be most strongly construed against the insurer and in favor of the insured: Yost v. Insurance Co., 38 Pa. Superior Ct. 594; Humphreys v. National Benefit Assn., 139 Pa. 264; Helme v. Insurance Co., 61 Pa. 107; Louck v. Insurance Co., 176 Pa. 638; Lebanon County v. Franklin Fire Ins. Co., 237 Pa. 360; Showalter v. Ins. Co., 3 Pa. Superior Ct. 448; City Fire Insurance Co. v. Corlies, 21 Wendell 367; Hoag v. Railroad Co., 85 Pa. 293.

The spark from the locomotive was not the proximate cause of the loss: Ryan v. New York Central R. R. Co.,

35 N. Y. 210; Scheffer v. Railroad Co., 105 U. S. 249; Northwest Transportation Co. v. Boston Marine Ins. Co., 41 Fed. Repr. 793; Crandall v. Accident Insurance Co., of North America, 27 Fed. Repr. 40; Jarnagin v. Protective Asso., 133 Fed. Repr. 892; Richmond Coal Co. v. Commercial Union Assurance Co., 169 Fed. Repr. 746; Baker & Hamilton v. Insurance Co., 157 Fed. Repr. 280; Williamsburgh City Fire Ins. Co. v. Willard, 164 Fed. Repr. 404; Atchison, Topeka & Santa Fe Railway Co. v. Calhoun, 213 U. S. 1.

*John E. Malone,* with him *John A. Nauman,* for appellee, cited: Haverly v. State Line & Sullivan R. R. Co., 135 Pa. 50; Gudfelder v. Railway Co., 207 Pa. 629; Penna. R. R. Co. v. Hope, 80 Pa. 373; Potter v. Natural Gas Co., 183 Pa. 575; Insurance Co. v. Tweed, 74 U. S. 44; German Savings & Loan Society v. Commercial Union Assurance Co., 187 Fed. Repr. 758; Insurance Co. v. Express Co., 95 U. S. 227; German Fire Ins. Co. v. Roost, 55 Ohio 581; Wallace v. Keystone Automobile Co., 239 Pa. 110.

OPINION BY MR. JUSTICE BROWN, June 27, 1913:

Isaac Montgomery was the owner of a farm in Eden Township, Lancaster County.  He died February 27, 1904.  On July 1, 1903, the Pennsylvania Railroad Company, under its right of eminent domain, appropriated for a roadbed for its low-grade road a strip of land extending through the said farm for a distance of about 1,500 feet and of a width of about 180 feet.  The south line of the right of way passed through a tobacco shed, leaving a portion of it on the company's right of way and the balance on Montgomery's land.  In 1905 the railroad company was engaged in constructing its new roadbed, the contractor doing the work being the John Shields Construction Company.  Dinky engines were operated on temporary tracks which ran past the tobacco shed.  On August 1, 1905, a fire broke out on the north

peak of this building, on the right of way of the railroad company, caused by a spark from one of the dinky engines. Sparks from the shed set fire to a frame barn and wagon shed located on the land of the plaintiffs, and they were entirely destroyed. In 1865 the Southern Mutual Insurance Company of Lancaster County issued a policy of insurance to Isaac Montgomery, insuring the said buildings. The plaintiffs brought suit against the John Shields Construction Company, alleging that its negligence had caused the fire, and instituted this action against the appellee upon the policy of insurance. The case against the construction company was tried first and a verdict rendered in favor of the plaintiffs. That company was insolvent and a dividend of only $168 was received on the judgment recovered against it, which sum has been credited on the present claim of the appellants. The defense set up in this action was the following section of the by-laws attached to the policy of insurance: "This policy shall cover any direct loss or damage caused by lightning,......but will not cover loss or damage by fire happening by means of insurrection of any military or usurped power, or fire from, or occasioned by locomotive engine or engines." A verdict was returned for the plaintiffs under undisputed facts, but the court subsequently entered judgment for the defendant non obstante veredicto, on the ground that the fire was within the exempting clause.

In the opinion of the court below, directing judgment to be entered for the defendant, the learned president judge said that the question of the plaintiffs' right to judgment on the verdict was not "without difficulty." We were at first of the same impression, but, after due consideration, have concluded that the policy covers the loss sustained, and that judgment should, therefore, be entered on the verdict.

The exemption of the appellee from liability is not, in express words, for loss by fire directly or indirectly from or occasioned by a locomotive engine or engines, and in

determining whether the appellants are entitled to recover it is first important to ascertain what was the intention of the parties to the contract of insurance as gathered from a reasonable construction of the words used in the exempting clause in the by-laws. These words are to be construed most strongly against the insurer and in favor of the insured, and, in so construing them, reasonable effect is to be given to them so as not to defeat—unless there be an imperative necessity to do so—the indemnity which the insured sought and thought he had secured through the policy of insurance: Franklin Fire Insurance Company v. Updegraff, 43 Pa. 350; Mears v. Humboldt Fire Insurance Company, 92 Pa. 15; Lancaster Silver Plate Company v. Fire Insurance Company, 170 Pa. 151; McClure v. Mutual Fire Insurance Company of Chester County, 242 Pa. 59. In so construing the words of the exempting clause the conclusion to be reached from them is that the fire contemplated by them was one directly from or directly occasioned or caused by a locomotive engine or engines.

Instead of a fire caused directly by a locomotive engine, the fire in the present case was caused directly by sparks from a burning building one hundred feet distant and entirely disconnected from those that were burned. The proximate and direct cause of the burning of the first building was a spark from an engine, and, if that building had been insured by the appellee under a policy of insurance similar in terms to the one in suit, the owner of the building could of course, have recovered nothing in an action against the insurance company; but if buildings hundreds of yards away, located on another farm, had been burned by a spark carried by the winds from the burning building, the owner of such burned buildings could not be denied a recovery in an action against an insurance company, if it had insured the buildings under a policy similar in terms to the one issued by the appellee to Montgomery, for the clause exempting the insurer from liability could not be reason-

ably so read or understood by any one as being expressive of any such intention by either party to the contract of insurance. Under the view entertained by the learned court below, the owner of the burned buildings could not recover; nor could there be a recovery by an owner of a house in a town entirely wiped out by fire caused by sparks from a building outside the municipal limits, if such building was set on fire by a spark from a locomotive. If the principle announced by the learned court below—not, however, without some misgiving—be correct, there can be no distinction made between the supposed cases and the one at bar. That the exempting clause in the Montgomery policy should have such an effect as has been given to it by the judgment in the court below could never have been contemplated by insurer or insured, and there is nothing in the clause that requires it to be so construed. On the contrary, as just stated, it contemplates a fire directly from or occasioned directly by an engine.

The case upon which the learned court below seems to have mainly relied in directing judgment for the defendant is Insurance Company v. Tweed, 74 U. S. 44. It must be admitted that what was there held sustained the learned president judge in his view as to what ought to be regarded as the proximate cause of the fire. Tweed brought suit against the insurance company on a policy of insurance against fire which covered certain bales of cotton in a building in Mobile known as the Alabama warehouse. The policy contained a proviso that the insurer should not be liable to make good any loss or damage by fire which might happen or take place "by means of any invasion, insurrection, riot, or civil commotion, or any military or usurped power, explosion, earthquake, or hurricane." During the period covered by the policy an explosion took place in a building known as the Marshall warehouse, situated directly across the street. This explosion threw down the walls of the Alabama warehouse, scattered combustible mate-

rials in the street, resulting in an extensive conflagration, embracing several squares of buildings, among which the Alabama warehouse and the cotton stored in it were wholly destroyed. The fire was not communicated directly to the Alabama warehouse from the Marshall warehouse, in which the explosion occurred, but came more immediately from a third building—the Eagle mill—which was itself fired by the explosion. The wind was blowing in a direction from the Eagle mill to the Alabama warehouse and the whole fire was a continuous one from the explosion. Upon this state of facts the court below held that the principle "causa proxima, non remota, spectatur," applied, and that the fire which consumed the cotton did not "happen or take place by means of an explosion." Judgment for the plaintiff was reversed, the Supreme Court of the United States holding that the explosion was the cause of the fire, within the meaning of the policy. Some years afterwards Mr. Justice MILLER, who wrote the opinion, in commenting upon it in Scheffer v. Railroad Company, 105 U. S. 249, said: "This case went to the verge of the sound doctrine in holding the explosion to be the proximate cause of the loss of the Alabama warehouse; but it rested on the ground that no other proximate cause was found."

In Pennsylvania Railroad Company v. Kerr, 62 Pa. 353, reference is made to the Tweed case, not, however, by way of approval, but rather in disapproval of it. In the Kerr case a warehouse belonging to one Simpson, situated very near the track of the company's road, was set on fire by sparks emitted from a locomotive belonging to the defendant. The burning of the warehouse communicated fire to a hotel situated thirty-nine feet distant, which, at the time, was occupied by the plaintiff. It, with its furniture, stock of liquors and provisions, was consumed, and for this the plaintiff sued and recovered in the court below, the trial judge charging that the defendant was liable by reason of the burn-

ing of the hotel, although by fire communicated from the
warehouse, if the latter was set on fire by the negligence
of the defendant's servants.   In holding that this was
error and reversing the judgment, we said: "It cannot
be denied but that the plaintiff's property was destroyed,
but by a secondary cause, namely, the burning of the
warehouse.   The sparks from the locomotive did not
ignite the hotel.   They fired the warehouse and the ware-
house fired the hotel.   They were the remote cause—the
cause of the cause of the hotel being burned.   As there
was an intermediate agent or cause of destruction be-
tween the sparks and the destruction of the hotel, it is
obvious that that was the proximate cause of its de-
struction, and the negligent emission of sparks the re-
mote cause.   To hold that the act of negligence which
destroyed the warehouse destroyed the hotel is to disre-
gard the order of sequences entirely, and would hold
good if a row of buildings a mile long had been destroyed.
The cause of destruction of the last, in that case, would
be no more remote, within the meaning of the maxim,
than that of the first, and yet how many concurring ele-
ments of destruction there might be in all of these
houses, and no doubt would be, no one can tell.......
According to the principle asserted, a spark from a
steamboat on the Delaware might occasion the destruc-
tion of a whole square, although it touched but a single
separate structure.......A railroad terminating in a
city might, by the slightest omission on the part of one
of its numerous servants, be made to account for squares
burned, the consequence of a spark communicating to a
single building."   In support of the foregoing Mr. Chief
Justice THOMPSON, who wrote the opinion, cited with
approval Ryan v. New York Central Railroad Company,
35 N. Y. 210.   In that case the defendant, through the
carelessness of its servants or through the insufficient
conditions of one of its locomotive engines, set fire to its
own wood-shed, with a large quantity of wood therein.
The plaintiff's house, situated some 130 feet from the

shed, took fire from the heat and sparks of the burning shed and wood and was entirely consumed. The plaintiff brought suit against the company for his loss. Judgment of nonsuit was affirmed by the Court of Appeals in an elaborate and exhaustive opinion by Mr. Justice HUNT. After referring to that case, Mr. Chief Justice THOMPSON proceeded to say: "But it seems to have been thought that Insurance Co. v. Tweed, 7 Wal. U. S. Rep. 45, conflicts with the above case. I do not think it does, when understood. It was an action on a policy of insurance against fire, in which there was an exception of several matters, viz, invasion, insurrection, military and usurped power, explosion, earthquakes, &c. An explosion took place in a warehouse on the opposite side of the street from the insured property, and scattered fire and burning fragments upon the insured property and destroyed it. The decision of the Supreme Court was, that the loss was within the exception of loss by fire occasioned by explosion. To me it seems that it would have been rather more rational to have held that the destruction was by fire per se. But the court interpreted the terms of the contract of the parties in this way. We must remember that there may be a difference between interpreting the obligation of a contract, and defining liability under the law of social duty. Certain it is, the laws are not the same. One does not necessarily rule the other. I may say further, that there is no evidence, in the opinion of Mr. Justice MILLER, that he had specially in view the same question, so ably discussed by Mr. Justice HUNT, or if he had, that his investigations extended so far as did those of the last-named judge. He does not even refer to the New York case at all."

Under Pennsylvania Railroad Company v. Kerr the appellants are entitled to judgment. But it is said the authority of that case has been somewhat impaired. There is an intimation to that effect in what was said by Mr. Justice MITCHELL in Haverly v. Railroad Company, 135 Pa. 50; but it is to be remembered, on the other

hand, that the case was cited with approval in Hoag v. Lake Shore & Michigan Southern Railroad Company, 85 Pa. 293. It has never been overruled, and we are not inclined to overrule it now, but rather to still regard it as having applied the correct rule to the facts in the case.

The fire which caused the destruction of the property of the plaintiffs was not occasioned or caused by fire from a locomotive engine. It was caused by a spark or sparks from a building which had first been set on fire by a spark from an engine, and, as we are clear that it was not the intention of either insurer or insured, as gathered from the words of the exempting clause of the policy, that such a fire was to be within that clause, it must be without the clause, and the loss occasioned by it is, therefore, within the general indemnity clause of the policy. The assignment of error is sustained, the judgment is reversed and the record remitted with direction that judgment be entered for the plaintiffs on payment of the jury fee.